CHRISTOPHER YOUNG,                      )
                                        )
        Plaintiff,                      )       No. 15 C 11596
                                        )
        v.                              )
                                        )       Judge Edmond E. Chang
CITY OF HARVEY and                      )
DENARD EAVES,                           )
                                        )
        Defendants.                     )

**MEMORANDUM OPINION AND ORDER**

Christopher Young was a police officer in the Harvey Police Department. He alleges that the City of Harvey and its police chief, Denard Eaves, fired him in retaliation for associating with another Harvey employee who had been making trouble for the City. R. 1 ¶¶ 27-32, 38, 41-42. That firing decision, Young contends, violated his First Amendment right to free speech and to associate, as well as the Illinois common law against retaliatory discharges in violation of public policy. R. 1, Counts 1-3. This Opinion summarizes the decisions made at the hearing on various motions on August 3, 2016.

**I. Defense Motion to Add After-Acquired Affirmative Defense**

First, as discussed during the hearing, the Defendants' motion to amend the answer and to add the affirmative defense of after-acquired evidence, R. 55, is granted. It is true that the defense probably could have sought to formally amend the pleadings and add this defense earlier in the case, because the defense has

known—as far back as the decision to fire Young in April 2014—that Young's former employer (the Cook County Sheriff's Office)—had alleged that Young engaged in some misconduct when he worked at Cook County Jail. But the defense did not know the specifics of the alleged misconduct, nor the specifics of the supporting evidence, and so the defense exercised caution (perhaps a bit too much) and waited until it reviewed a document production from the Sheriff's Office (the subpoena to the Sheriff was the subject of a prior order, R. 39). And Young is not unduly prejudiced by adding the affirmative defense now, because he has been on notice of the defense's reliance on the alleged misconduct no later than April 2016, when the propriety of the subpoena to the Sheriff was litigated. Nor does the Court find persuasive Young's argument that the alleged misconduct is not truly "after"-acquired evidence, because the City and Chief Eaves knew about the misconduct at the time of firing. But the line is not so bright, because if the jury rejects that Eaves knew about the misconduct, then the defense would be entitled to argue that in fact the evidence was truly *after*-acquired and could impact what damages and relief should be awarded. Also, it is at least plausible (this is just a pleading issue, not a finding on the merits) that the defense will be able to argue that, even if Eaves knew *something* about the alleged misconduct, he did not have all the specifics, so in that sense the evidence is genuinely after-acquired. Of course, Rule 401 relevancy and Rule 403 concerns will be litigated before trial, and might substantially narrow what evidence can be introduced on this defense (assuming the defense is not

targeted in a summary judgment motion). But for the here and now, Rule 16(b)'s good cause requirement has been met to add the affirmative defense.

## II. Young's Motion to Compel

Next, Young moved to compel answers (or fuller answers) and documents (or more documents) to certain interrogatories and document requests. The Court discussed each interrogatory and request in detail during the hearing. The only interrogatory that needs a written discussion here is Interrogatory 12. In that interrogatory, Young asked for information on other accusations and claims of retaliation, in violation of the Constitution, employment laws, or Illinois common law, that have been asserted against Chief Eaves. The Court explained that this category is discoverable, and that the defense must answer the interrogatory for the time period April 1, 2009 through August 3, 2016. Going back five years is a reasonable limit, at least to start, because retaliatory acts that happened more than five years before Young's April 2014 firing will already face an uphill climb to be allowed into evidence. If, through the interrogatory answer, Young learns about relevant acts of retaliation during April 2009-August 2016 time span, then he can ask the Court again to expand the time to show a pattern. And the information is not limited to formally filed lawsuits or government-agency charges (like EEOC or Illinois Department of Human Rights charges), but also includes other accusations that did not reach that level of filing (for example, an accusation that is document in Eaves's personnel file, even if no lawsuit or EEOC charge was filed).

During the hearing, the Court noted that Federal Rule of Evidence 404(b) might, on the surface, pose a bar to discovery on other acts of retaliation allegedly committed by Eaves. Specifically, in *United States v. Gomez*, 763 F.3d 845 (7th Cir 2014) (*en banc*), the Seventh Circuit clarified and narrowed the scope of evidence allowed to be introduced at trial under this rule. Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Put another way, other-acts evidence cannot be introduced to show that a person had a "character"—that is, a propensity to act in a certain way—in order to show that the person acted that way on a specific occasion. Rule 404(b)(2) goes on to say that other-acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). But Rule 404(b)(2)'s authorization to introduce other-acts evidence for another purpose is *not* an exception to Rule 404(b)(1)'s ban against proving an act via propensity. *Gomez*, 763 F.3d at 855 n.3. That is the upshot of *Gomez:* "Rule 404(b) excludes [other-acts] evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Gomez*, 763 F.3d at 856 (emphasis in original).

In light of *Gomez*, it is not enough for Young to say only that some "other act" is relevant to intent or motive; the act must bear on intent or motive *without* relying on the notion that people are more likely to do something if they have the

4

"character" to do it. But other acts of retaliation reasonably could be allowed under Rule 404(b) (of course, trial decisions will be made at the pretrial conference and, if needed, the trial itself). Before discussing why this evidence is admissible for a permissible purpose, it is necessary to be precise about which purpose really applies, because that is the only way to test whether a forbidden propensity inference is relied on. The question is whether the permissible purpose is "intent," "motive," or possibly both. To prevail in this case, Young must prove that Eaves fired him *because* of the exercise of his right to free speech and association.[1] "Intent" does not really fit here: the state of mind described by "intent" means an intent to perform some *act*. Depending on what a case is about, the state of mind of "intent" could be relevant in different ways: (1) the dispute might be over whether a person acted *with* intent, that is, acted on purpose, as distinct from accidentally (*e.g.*, whether a driver striking another car intended to strike the other car, or instead did so accidentally); (2) the dispute might be over whether a person acted with a particular intent to perform an act *already performed* (*e.g.*, a defendant accused of making a false statement did intend to make the statement, but did the defendant act with the intent to defraud); or (3) the dispute might be over whether a person did something with the intent to perform some *future* act (*e.g.*, a defendant accused of possessing drugs with the intent to distribute them later). "Motive' is *different* from intent: motive describes *why* someone performed an act (*e.g.*, the defendant

---

[1]This is similar to a Title VII employment discrimination case, where employees must prove that they were fired "because of" the classification (such as gender or race) at issue. *E.g.*, 42 U.S.C. § 2000e-2(a)(1) (defining unlawful employment practice to discharge an individual "because of" gender).

defrauded an investor with the motive to pay another investor) or *why* someone had a particular intention (*e.g.*, the defendant intended to distribute drugs *because* he wanted to make money from the deal).

In an employment case like this one, the real question is motive: *why* did Eaves fire Young? Was it because of Young's alleged misconduct at the Sheriff's Office (or Young's failure to disclose it), or instead because of his speech and association? "Intent," properly understood, is *not* really the issue. The act of firing was of course not accidental (the act was done intentionally); the intent of the firing was to remove Young from his position; and there is no issue concerning an intent to commit a future act. To drive this point home, consider the analogous situation for Title VII employment-discrimination cases. The statute there describes the issue as one of motive, both by using the term "because of" to describe the mental state underlying the unlawful employment practice, § 2000e-2(a)(1), (2), and by explicitly referring to motive when defining mixed-motive employment decisions to be unlawful, § 2000e-2(m). On the latter point, Title VII says, generally, that an employment practice is unlawful if the employee shows that one of the forbidden grounds was a "*motivating* factor" for the practice, "even though other factors also *motivated* the practice." *Id.* (emphases added). Similarly, what Young is really arguing is that retaliation against other employees is relevant evidence to show the *motive* for his own firing.

With the focus properly on motive, it is time to answer whether Rule 404(b)(2) *ever* allows, under the *Gomez* bar against propensity-based inferences, a

6

plaintiff to offer evidence that supervisors fired other employees for a forbidden reason as evidence that the supervisors fired the plaintiff for the same reason. There is a short (relatively speaking) answer and a long answer. The short answer is that Seventh Circuit case law before *Gomez* did sometimes allow that sort of evidence under Rule 404(b)(2), and the case law remains binding on this Court. Indeed, years of Circuit precedent favor allowing this kind of evidence in employment discrimination cases. *Manuel v. City of Chicago*, 335 F.3d 592, 596 (7th Cir. 2003) ("Other-acts evidence may be relevant and admissible in a discrimination case to prove, for example, intent or pretext.") (citing Fed. R. Evid. 404(b)); *Molnar v. Booth*, 229 F.3d 593, 603-04 (7th Cir. 2000) (supervisor's sexual harassment directed at another employee admissible under Rule 404(b)); *Hunter v. Allis-Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1423-24 (7th Cir. 1986) (affirming employment discrimination verdict in favor of employee over employer's objection to other-discriminatory-acts evidence); *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985) (reversing summary judgment for employer in reliance on the "statement of another co-employee who stated that she retired early because the [employer] made her 'feel unwelcome in [her] job because of [her] age.'"). To be sure, *Gomez* is an *en banc* opinion, but *Gomez* dropped no hints that it intended to overrule the settled case-law in employment-discrimination cases. And without more direct say-so from the Seventh Circuit, in a hierarchical judiciary, this Court must leave it up to the appellate court to overrule its own precedent.

Bolstering this view is that the Supreme Court itself has deemed evidence of discrimination against other employees as admissible in employment-discrimination cases. Going way back to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973), the Supreme Court explained that an employee might be able to show that an employer's proffered reason for decision might be pretextual by relying on the employer's "general policy and practice with respect to minority employment. On [this] point, statistics as to [the employer's] employment policy and practice may be helpful to a determination of whether [the employer's] refusal to rehire [the employee] in this case conformed to a general pattern of discrimination against blacks." *Id.* at 804-05. The very definition of a pattern of discrimination is that the employer discriminated against not just the plaintiff, but other employees as well, and that evidence of other unlawfully motivated decisions may be offered to prove the motivation behind the decision as to the plaintiff.

What's more, relevancy determinations (Rule 404(b) determinations are really just a special type of relevancy finding) "are generally not amenable to broad *per se* rules." *Sprint/United Mngmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). In *Sprint*, the plaintiff proposed evidence of age discrimination committed by supervisors who did *not* supervise her. 552 U.S. at 382. The Supreme Court disapproved of any categorical bar against other-supervisors evidence, and remanded to allow the district court to consider the issue in the first instance (the Supreme Court thought it was unlikely that the district court had actually applied a categorical bar). *Id.* at 387. *Sprint* expressly described the relevancy determination

as "fact based and depend[ent] on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 388.

On top of the pre-*Gomez* Seventh Circuit law and Supreme Court references to other-acts evidence, other Circuits also allow, in appropriate circumstances, evidence that the decision-maker discriminated against other employees. *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) ("The 'me too' evidence was admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate."); *Buckley v. Mukasey*, 538 F.3d 306, 319-20 (4th Cir. 2008) ("Moreover, such evidence of other wrongs or acts is admissible under Rule 404(b), which allows evidence of other wrongs for purposes such as proof of motive and intent."); *Hitt v. Connell*, 301 F.3d 240, 249–50 (5th Cir. 2002) (ruling that coworkers were properly "allowed to testify that they were discharged or otherwise discriminated against because of their participation in the union," because such evidence was admissible as proof of motive in case of plaintiff alleging retaliation for union participation); *Morris v. Wash. Metro. Area Transit Auth.*, 702 F.2d 1037, 1046 (D.C. Cir. 1983) (admitting for proof of motive "evidence showing that the employer followed a broad practice of retaliation and responded to any protected criticism with disciplinary action").[2]

---

[2] Even circuits with *Gomez*-like interpretations of Rule 404(b) rely on other-acts evidence in discrimination cases. The Third Circuit has a *Gomez*-like interpretation of Rule 404(b) on the books. *See United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992) ("If the government offers prior offense evidence, it must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed drug offenses before, he therefore is more likely to have committed this one."). And it still allows other-acts evidence in employment discrimination cases. *See Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 521 (3d Cir. 2003); *but see Becker v.*

In light of all this, the bottom-line is that *Gomez* does not impose a categorical ban on evidence that supervisors discriminated or retaliated against other employees. That is the short answer. The long answer is that, even if this Court could take an entirely fresh look at the issue now that *Gomez* is on the books, the Court would conclude, generally speaking, that evidence of a decision-maker's treatment of other employees does not necessarily rely on a propensity inference.

To understand this, it helps to step back and examine the rationale behind Rule 404(b)(1). The primary concern underlying Rule 404(b)(1) is *not* that character evidence is always actually irrelevant; to the contrary, character sometimes does have a tendency to make more probable that a person acted in a certain way. *Michelson v. United States*, 335 U.S. 469, 475-76 (1948) (cited by Fed. R. Evid. 404(b), 2006 Advisory Committee Note). Instead, the concern is that juries will rely too heavily on character to decide the disputed issue, either because the jury will place an outsized emphasis on the character evidence when its true probative force is not as strong as the jury believes, or the jury will get confused over what actually is the specific issue on trial, or the jury will simply decide the case mostly on a character contest, out of a desire to punish bad character or to reward good character.

So if the evidence does not really demonstrate a person's "character" "to show that on a particular occasion the person acted in accordance with the character," then the primary concern of the Rule is not undermined, Rule 404(b)(1) is not

---

*ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000) (rejecting plaintiff's other-acts evidence because it only went to pretext via a propensity inference).

violated, and the jury is not being asked to draw a propensity-based inference. It is important to note the Rule's emphasis on *action* ("acted" in accordance with character), which is a classic example of propensity: if someone acted one way before, the he likely acted the same way later. It is not surprising that *Gomez*, as well as other cases discussed by *Gomez*, involved the use of propensity to prove identity, that is, whether the defendant was the one who was dealing drugs. That raised the specter of propensity in whether the defendant had once again *acted* in a certain way: "Once a drug dealer, always a drug dealer." *Gomez*, 763 F.3d at 862-63. In contrast, remember that the issue here is what was the *motive* for Young's firing. For state of mind issues such as motive, the Supreme Court recognizes that other-acts evidence might be needed to prove a mental state:

> Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.

*Huddleston v. United States*, 485 U.S. 681, 685 (1988) (explaining that prior "similar" sale of stolen goods was relevant to show the defendant's knowledge, under Rule 404(b), of the stolen nature of the goods in the charged sale). Here, other acts of retaliation would not be introduced to solve a whodunit; they would be introduced to show Eaves's state of mind—*why* he fired Young.[3] It does bear

---

[3] This is not to say that a bare invocation of a state of mind is enough to disconnect the permissible Rule 404(b) purpose from a propensity inference. For example, in prior drug cases, the government would seek to introduce prior drug deals as proof of the defendant's "intent" to distribute drugs. In reality, intent to distribute was not a truly disputed element (because the drug quantity was so great that no one would believe it was for personal use), yet "intent" inadvertently became the Trojan Horse carrying prior drug deals into evidence.

repeating, however, that this case is just at the discovery stage, so the Court is not making any final *trial* decisions on the admissibility of what is learned in discovery.

Moving beyond that interrogatory, at the hearing, the Court detailed the decision on the other disputed interrogatories and requests. In sum:

*Interrogatories 6 and 9, and 10, 14, and 15.* The defense's supplemental answers are sufficiently detailed in explaining the reasons for the termination, with the caveat that the defense is stuck with these answers, absent good cause for supplementing them again (it is difficult to envision that on this basic point, this deep into discovery). For the same reasons, the answers to Interrogatory 10 (what in Young's background was not satisfactory) and Interrogatories 14 and 15 (what caused Young's training period to end) have been sufficiently answered, because those answers turn on the reasons for the termination.

*Document Request 24.* A copy of the defense insurance agreement must be provided to Young by August 17, 2016. There is no good reason why something that should have been disclosed with Rule 26(a)(1) disclosures has still not been provided.

*Document Requests 28, 29, 30.* As detailed during the hearing, these requests are validly targeted at discovering what Young lost in compensation and benefits, if he proves liability. For those officers hired from January 1, 2011 through December 31, 2014, the defense shall disclose the requested documents for the time period April 1, 2014 through April 1, 2016. The parties shall confer over whether names can be redacted with stand-ins, such as Employee 1, Employee 2, and so on. Depending on the trial timing, Young may ask for a supplement to this request, going past April 1, 2016, when this case gets to the pretrial preparation stage.

*Document Request 39.* Under attorney's eye's only protection, the defense shall disclose performance, disciplinary, and disciplinary investigation records for the seven allegedly comparable employees who were not fired. The time period is limited to January 1, 2007 onward (based on the presumed time period when Eaves became Acting Chief of the department).

---

That type of evidence thus really was reliant on propensity: once a drug dealer, always a drug dealer.

*Various Document Requests.* This aspect of the motion is denied. Young's motion simply listed out the requests by number with nary an explanation for why responses should be compelled.

*Deadline.* The deadline to answer the interrogatories and to disclose documents is September 19, 2016. The fact discovery deadline is extended to November 4, 2016.

### III. Young's Motion for Protective Order

Lastly, as explained during the motion hearing, Young's motion for protective order concerning deposition questions about the prior alleged misconduct is denied. It is not possible to concretely police the deposition questioning with a ban, in Young's words, on "unnecessarily embarrassing" questions, R. 63 at 2. The usual incentives are in place, such as wasting the 7-hour time limit and post-deposition sanctions. Young is free, however, to designate, at least provisionally, portions of the deposition as confidential. And the parties shall confer on how many, if any, depositions are really needed from Sheriff's Office employees, after Young's deposition is taken.

The next status hearing is set for November 9, 2016, at 9 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 4, 2016